# Composite Exhibit "A"

Florida

# NOTE

FHA Case No.
[redacted]

~~THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.~~ (MU)

November 25th, 2008 Loan #: [redacted]
[Date]

55 Frank Run
Midway, FL 32343
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PEOPLES FIRST COMMUNITY BANK

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Fifty Four Thousand Six Hundred Thirty Eight and no/100.--------

Dollars (U.S. $ 154,638.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and Fifteen one-hundredths percent ( 6.150 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on January 1st, 2009 . Any principal and interest remaining on the first day of December 2038 , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 1022 W 23RD STREET, PANAMA CITY, FL 32405 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 942.10 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMPS TAX AND INTANGILBE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES** (MU)

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety

or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Mary A Kendrick (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

PAY TO THE ORDER OF
U.S. BANK, N.A.
WITHOUT RECOURSE
PEOPLES FIRST COMMUNITY BANK
ELIZABETH K. STEPHENS, VICE PRESIDENT

*[Sign Original Only]*

Pay to the order of

Without Recourse
U.S. Bank N.A.

Teresa Bulver
Vice President

[redacted]

OFFICIAL RECORDS
BK 707 PG 1480
Record Fee: 10.00

Return to: Peoples First Community Bank
1022 West 23rd St.
Panama City, Fl. 32405

[redacted] RCD:01/15/2009 @ 1:45 PM
Nicholas Thomas, Clerk Circuit Court Gadsden Co

**ASSIGNMENT OF MORTGAGE**

*This form was prepared by: Glynda Law*
*Peoples First Community Bank*
*1022 West 23rd. Street*
*Panama City, Florida 32405*
*Phone: 850-770-7000*

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1022 W. 23rd St, Panama City, Florida 32405, does hereby grant, sell, assign, transfer and convey, unto the U.S. BANK N.A., a party, (herein "Assignee"), whose address is 17500 Rockside Rd., Bedford, Ohio 44146 a certain Mortgage dated **NOVEMBER 25, 2008** made and executed by

**MARY A. KENDRICK, A MARRIED WOMAN AND DEREK KENDRICK, HER HUSBAND**
**55 FRANK RUN**
**MIDWAY, FLORIDA 32343**

to and in favor of Peoples First Community Bank, a corporation existing under the laws of the State of Florida and given to secure payment of **ONE HUNDRED FIFTY FOUR THOUSAND SIX HUNDRED THIRTY EIGHT AND NO/100 DOLLARS**

Maturity Date: **DECEMBER 1, 2038**

Re-recorded in Bk 706 Pg 117

which Mortgage is of record in Book, Volume, or Liber No. 705 page 1212 of the Public Records of **GADSDEN** County, State of Florida, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on December 8, 2008

PEOPLES FIRST COMMUNITY BANK

Beverly Mathis
Witness: Beverly Mathis
P.O. BOX 59950 PANAMA CITY, FL 32402

Glynda Law
Witness: Glynda Law
P.O. BOX 59950, PANAMA CITY, FL 32402

Elizabeth K. Stephens
Elizabeth K. Stephens, VICE PRESIDENT
P.O BOX 59950, PANAMA CITY, FL 32402

**STATE OF FLORIDA**
**COUNTY OF BAY**

I, an officer authorized to take acknowledgements of deeds according to the laws of the State of Florida, duly qualified and acting, HEREBY CERTIFY that Elizabeth K. Stephens, VICE PRESIDENT of PEOPLES FIRST COMMUNITY BANK to me personally known, this day acknowledged before me that they executed the foregoing assignment of mortgage as such officers of said corporation, and that they affixed thereto the official seal of said corporation; and I FURTHER CERTIFY that I know the said persons making said acknowledgements to be the individuals described in and who executed the said assignment of mortgage.

IN WITNESS WHEREOF, I hereunto set my hand and official seal at PANAMA CITY, FLORIDA said County and State, this 8th Day of December, 2008

MY COMMISSION EXPIRES:
JUNE 23, 2011
PERSONALLY KNOWN YES OR TYPE OF
IDENTIFICATION PRODUCED
DID NOT TAKE OATH

Cindie J Evans
CINDIE J. EVANS
NOTARY PUBLIC
P.O. BOX 59950, PANAMA CITY, FL 32402

CINDIE J. EVANS
Notary Public - State of Florida
My Commission Expires Jun 23, 2011
Commission # DD 647010
Bonded Through National Notary Assn.

Return To:
PEOPLES FIRST COMMUNITY BANK

1022 W 23RD STREET
PANAMA CITY, FL 32405
850-770-7000

OFFICIAL RECORDS [redacted]
BK 706 PG 117
Record Fee: 112.00
[redacted] RCD:12/09/2008 @ 2:29 PM
Nicholas Thomas, Clerk Circuit Court Gadsden Co

OFFICIAL RECORDS 080013639
BK 705 PG 1212
Record Fee: 112.00
[redacted] RCD:12/01/2008 @ 4:56 PM
Nicholas Thomas, Clerk Circuit Court Gadsden Co

This document was prepared by:
Angela White
An employee of:
Peoples First Community Bank
1022 W 23RD STREET
PANAMA CITY, FL 32405
850-770-7000

[Space Above This Line For Recording Data]

**State of Florida**

FHA Case No. [redacted]

[redacted]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on November 25th, 2008 . The Mortgagor is Mary A Kendrick, A Married Woman

**AND DEREK KENDRICK, HER HUSBAND**

, whose address is
55 Frank Run, Midway, FL 32343

("Borrower"). This Security Instrument is given to PEOPLES FIRST COMMUNITY BANK

which is organized and existing under the laws of The United States of America , and whose address is 1022 W 23RD STREET, PANAMA CITY, FL 32405 ("Lender"). Borrower owes Lender the principal sum of One Hundred Fifty Four Thousand Six Hundred Thirty Eight and no/100. Dollars (U.S. $ 154,638.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on December 1st, 2038 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance



**THIS MORTGAGE AND THE NOTE SECURED BY THIS MORTGAGE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMPS TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

MAK DK

OFFICIAL RECORDS 080013639
BK 705 PG 1213

OFFICIAL RECORDS 080013972
BK 706 PG 118

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in Gadsden County, Florida:

**See Exhibit "A" attached hereto and made a part hereof**

Parcel ID Number:
which has the address of 55 Frank Run [Street]
Midway [City], Florida 32343 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

OFFICIAL RECORDS 080013639
BK 705 PG 1215

OFFICIAL RECORDS 080013972
BK 706 PG 120

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

OFFICIAL RECORDS 0800013639
BK 705 PG 1216

OFFICIAL RECORDS 080013972
BK 706 PG 121

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

OFFICIAL RECORDS 080013639
BK 705 PG 1218

OFFICIAL RECORDS 080013972
BK 706 PG 123

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [ ] Condominium Rider | [ ] Growing Equity Rider | [x] Other [specify] |
| [x] Planned Unit Development Rider | [ ] Graduated Payment Rider | Tax Exempt Rider |

OFFICIAL RECORDS 080013639
BK 705 PG 1219

OFFICIAL RECORDS 080013972
BK 706 PG 124

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Wilma K. Farris

Sherry Fordham

(Seal) Mary A Kendrick -Borrower

Derek Kendrick (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

OFFICIAL RECORDS 080013639
BK 705 PG 1220

OFFICIAL RECORDS 080013972
BK 706 PG 125

**STATE OF FLORIDA,** Leon **County ss:**

The foregoing instrument was acknowledged before me this November 25th, 2008 by Mary A Kendrick & Derek Kendrick Her Husband

who is personally known to me or who has produced DL as identification.

Notary Public

WILMA K. FARRIS
MY COMMISSION EXPIRES
October 30, 2012
#DD 808831
Bonded thru Troy Fain-Insurance
NOTARY PUBLIC, STATE OF FLORIDA

OFFICIAL RECORDS 080013639
BK 705 PG 1222

OFFICIAL RECORDS 080013972
BK 706 PG 127

# PLANNED UNIT DEVELOPMENT RIDER

[redacted]

FHA Case No. [redacted]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 25th day of November 2008 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to PEOPLES FIRST COMMUNITY BANK

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

55 Frank Run
Midway, FL 32343
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as
Orion's Point
Declarations of Covenants and Restrictions
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

OFFICIAL RECORDS 080013639
BK 705 PG 1223

OFFICIAL RECORDS 080013972
BK 706 PG 128

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Mary A Kendrick (Seal) -Borrower | (Seal) -Borrower

Derek Kendrick (Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

(Seal) -Borrower | (Seal) -Borrower

OFFICIAL RECORDS 080013639
BK 705 PG 1224

# EXHIBIT "A"

Lot 15, Block "L", Orion's Point, Phase 2, a subdivision as per map or plat thereof recorded in Plat Book 2, page 145 of the Public Records of Gadsden County, Florida.

OFFICIAL RECORDS
BK 706 PG 129

080013972

80

Return To: Stewart Title
of Tallahassee, Inc.
3301 Thomasville Road, Ste. 202
Tallahassee, FL 32312

File # 800|450

Re - Rec. 112.00

Int. ____

Doc ____

Cert. ____

112.00

OFFICIAL RECORDS 080013639
BK 705 PG 1221

OFFICIAL RECORDS 080013972
BK 706 PG 126

# TAX EXEMPT FINANCING RIDER TO SECURITY INSTRUMENT

THIS TAX-EXEMPT FINANCING RIDER is made this 25th day of November, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage or Security Deed ("Security Instrument") of the same date given by the undersigned ("Mortgagor") to secure Mortgagor's Note ("Note") to Peoples First Community Bank ("Lender") of the same date and covering the property described in the Security Instrument and located at :

55 Frank Run, Midway, Florida, 32343
(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if the loan is not paid in full and:

(a) all or part of the property is sold or otherwise transferred by Mortgagor to a purchaser or other transferee:

(I) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143 (c) and (i) (2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i) (2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d) (1); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i) (2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143 (f) and (i) (2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the mortgage without the prior written consent of the Mortgagee or its successors or assigns described at the beginning of this addendum ;or.

(c) Mortgagor omits or misrepresents a fact which is material with respect to the provisions of Section 143 of the Internal Revenue Code of 1986 in an application for this mortgage.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of the Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

**DATE:** 11/25/08

**SIGNATURE OF MORTGAGOR** Mary A. Kendrick

**SIGNATURE OF MORTGAGOR** [signature]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| MARY A. FLOYD<br>*fka* MARY KENDRICK<br>DEREK KENDRICK | CASE NO. 8:16-bk-01171-CPM<br><br>CHAPTER 7 |

Debtors.
_______________________________________/

## DECLARATION AS TO SURRENDERED PROPERTY

I, Austin M. Noel, Esq., swear and affirm, under penalty of perjury, the following is true and correct:

1. I am counsel for U.S. Bank National Association ("Movant") in the above styled case.

2. This declaration is being filed in support of the Motion for Relief from Stay filed in the case by Movant.

3. I have personally reviewed the docket and the Debtors' Schedules. According to the Statement of Intention, Debtors are surrendering real property located at **55 Frank Run, Midway, Florida 32343** ("Collateral").

4. The Collateral is located in Gadsden County, Florida, and is more particularly described as follows:

Lot 15, Block "L", Orion's Point, Phase 2, a subdivision as per map or plat thereof recorded in Plat Book 2, page 145 of the Public Records of Gadsden County, Florida.

5. As of the date of this affidavit, I have examined the CM/ECF docket for this case and have found no entries evidencing a contrary intent on the part of the Debtors.

FURTHER AFFIANT SAYETH NAUGHT.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated this 14th day of July, 2016.

*/s/ Austin M. Noel*
Austin M. Noel, Esquire
Florida Bar Number 106539